WILLIAM and TRAFENIA TATMAN'S LESSEE v. ISAAC POLK, tenant, ELIJAH ADAMS and WIFE, co-defendants.

Court of Common Pleas. Sussex. November 22, 1802.

*Rodney's Notes.*

---

[1] Manuscript torn.
[2] Blank in manuscript.

*Bayard, Horsey* [for plaintiffs]. *Vandyke, Wilson* [for defendants].

October 22, 1756. Survey of Venture for Benjamin Wynklock and takes in part of from surveyor's book or record, page 28, 29, abstract of the same, page 277, in Great Neck Cedar Creek Forest.

July 18, 1797. Certificate for patent to William [and] Trafenia Tatman for a hundred acres, part of Venture.

April 13, 1798. Patent to William and Trafenia Tatman, 180 acres, part of Venture.

James F. Baylis, surveyor. The boundaries of Venture were shown me by witnesses, woods between the fields.

Matthew Coverdale. Was at the first survey by William Shankland, was all woodland. Beginning was a large white oak, midway near the road (marked) to the north of Ingram's Road, is now standing in the forks of this and Jackson's Mill road. Next boundary, a maple in Big Belly Swamp. Have been acquainted with this land from the surveying till now. Never had been claimed before to my knowledge. William Tatman, the father, died six or seven years ago, worked and planted an orchard and lived in the old house two hundred yards from Biging to the land. Nine or ten years, John Sharp possessed it before Tatman. Polly Polk has cleared a piece in upon this tract. I. Polk has tilled it three or four years. Charles Polk got aforesaid with John Sharp and laid the warrant on him.

Cross-examined. Pennington Welch sold it long before the war. Knew old Charles Polk, the father of Charles. Last mentioned Charles had two children, one son is living. Ephraim Polk was living when surveying was made. Charles Polk, Senior, owned 39 acres on Big Belly Swamp.

Sharp. My father possessed the lands up to the white oak. Baylis run from the white oak; it stands in the forks of the road, the same as Coverdale spoke of. Have known it 28 years. I

carried the chain for Baylis. About two years ago Isaac Polk told me he'd taken it, the Beaver Dam place, for four years of Mrs. Polk or Adams.

Cross-examined. Have known the Beaver Dam place 25 years, a small spot cleared, at first possessed by Polk. Has been a dispute ever since my father held it.

William Loftland. My father had two warrants. This land was surveyed under one of them, were both of one date. Tatman lived on it, was some dispute then. My father's been dead nine or ten years.

William Lines. Isaac Polk tilled it in 1797, and has held it since till this and last year. In 1797 Isaac Polk's hands cut one large chestnut for rails on the north side of Ingram Road, on the south of the branch on the Venture side. My father, 22 or 23 year ago, cleared ten acres on south of Polk's field. Four or five have been since cleared. Road runs along plaintiff's field westerly till within ten steps of Polk's field.

Cross-examined. Know small white oak near slash. Run the line to R. O. S. side of Ingram Road (marked).

*Mr. Wilson* for defendant. Warrant called Donahoe's warrant, between Ephraim Polk and Charles Polk, directed to William Shankland by Nicholas Scull to survey 150 acres. February 18, 1756.

P. Kollock, sworn, to prove the assignment (for £40) of this warrant, witnessed by Joseph and Naome. (June 17, 1771) Shankland, aforesaid, to Charles Polk.

July 2, 1772. Survey of Donahoe's warrant to Charles Polk.

1795. Patent to Charles Polk for 216 acres, called Brothers Division.

September 8, 1748. Warrant to Charles Polk for Forest Park on the west side of lands in dispute. Charles Polk's will.

Charles Polk. My uncle Charles left three children. Two are dead, one living, about fourteen, called Charles. Beginning W. O. of Brothers Division, stands one hundred yards from corner of field. Two hundred yards north-east of Ingram Road. I hold Forest Park which binds with this to the branch at intersection of thirteen line.

A paper dated 1771 signed by Pennington Welch and Charles Polk, certifying that it was agreed between them Ingram Road was to be the boundary between them, offered as to boundary. Objected by plaintiff's counsel that Welch had assigned his warrant in 1765, six years before.

[Defendants' counsel.] Esp.N.P. 489, 786. Hearsay admissible in certain cases.

Not admitted as competent evidence, PER CURIAM. Counsel for defendants pray an exception to the opinion of the Court on the paper purporting to be a certificate, which the Court allow.

Charles Polk is 25 years old. Have known the boundary eight or nine years ago, marked by Charles Polk's direction, who died 1795.

(Twenty-five of 10 o'clock.)

*Horsey.* First location of Venture I conceive is made out by Coverdale etc. Second, possession by defendant. Third, clear title in plaintiffs. Defendants' location uncertain. Survey 1772, our survey 1756. Esp.N.P. 433, 435.

*Wilson* for defendant. We do not claim any part of Brothers Division to the south of Ingram's Road. As to proprietary warrants or located warrants, of which ours is, [it] begins the inception of our title and is prior to plaintiffs'. Survey between Ephraim and Charles Polk of 150 acres. Plaintiffs' title begins I contend in October, ours in February, 1756. Recital is binding only on parties not strangers. Every plaintiff must have [been] in possession within twenty years; where two are in possession the law will adjudge it to him that has the right.

*Vandyke.* It is contended by plaintiff's counsel there is some symptom of fraud.

*Bayard* in conclusion. Esp.N.P. 434.

PER CURIAM. This cause has been fully argued by the counsel for both plaintiff and defendant, and there does not appear to be any material difference in opinion as to the law that applies in this case. The Court however would observe that special or located warrants takes effect immediately on the lands that are particularly described therein, and also that the plaintiff should recover on the strength of his own title, and must prove himself in possession within twenty years, but defendant's possession to bar a recovery by plaintiff must be adverse. You have the evidence before you, and it is your duty to make such deductions and conclusions from it, as you may think it deserves.

Verdict for plaintiff.